# EXHIBIT 1

Basil P. Fthenakis, Esq (88399)
CRITERION LAW
2225 E. Bayshore Road, Suite 200
Palo Alto, California 94303
Tel (650) 352-8400
Fax (650) 352-8408

Of counsel:

David S. Godkin
Andrew A Caffrey, III
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100
godkin@birnbaumgodkin com
caffrey@birnbaumgodkin com

Attorneys for Plaintiff,
SIX4THREE, LLC, a Delaware
limited liability company

FILED
SAN MATEO COUNTY

APR 1 0 2015

Clerk of the Superior Court
By _____
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN MATEO

CW 5 3 3 3 2 8

| | |
|---|---|
| SIX4THREE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation and DOES 1 through 50, inclusive<br><br>Defendants | Case No<br><br>COMPLAINT OF PLAINTIFF, SIX4THREE, LLC, FOR INJUNCTION AND DAMAGES FOR:<br>1 PROMISSORY ESTOPPEL,<br>2 INTENTIONAL INTERFERENCE WITH CONTRACT,<br>3 INTETIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS, AND,<br>4 VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 ET SEQ |

BY FAX

Plaintiff, Six4Three, LLC, alleges as follows:

1. This matter concerns Defendant Facebook, Inc.'s unilateral decision to terminate third-party developer access to part of the Facebook platform, which it had previously pledged to

1

Case No _____    Plaintiff's Complaint for Injunction and Damages

keep open  In reliance on Facebook's representations of open access to the Facebook platform, Plaintiff Six4Three, LLC ("643") invested considerable time, effort, and expense in developing an application, only to have that investment rendered worthless by Facebook's decision. 643 brings this action to make Facebook adhere to its open-access promise, or make 643 whole for the loss of its investment

## PARTIES

2       Plaintiff 643 is a Delaware Limited Liability Corporation with a principal place of business at 175 Varick Street, 4th Floor, New York, New York

3       On information and belief, Defendant Facebook, Inc , is a Delaware Corporation with a principal place of business of One Hacker Way, Menlo Park, California.

4.       Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive, and each of them, and therefore sues said Defendants by such fictitious names  Plaintiff will amend this complaint when the true names and capacities of said Defendants have been ascertained  Plaintiff is informed and believes and thereon alleges, that Defendants Does 1 through 50, inclusive, and each of them, are legally responsible in some manner for the events and happenings referred to herein and proximately caused or contributed to the injuries to Plaintiff as hereinafter alleged  Wherever in this complaint any Defendant is the subject of any charging allegation by Plaintiff, it shall be deemed that said Defendants Does 1 through 50, inclusive, and each of them, are likewise the subjects of said charging allegation

5       Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing the things herein alleged, was acting within the course and scope of said agency and employment

## FACTS

6       643 is an image pattern recognition startup company.

7.       Facebook operates a social networking service that enables users to connect and share information with their friends and family.

FINAL

2

Case No _____                    Plaintiff's Complaint for Injunction and Damages

8       Facebook refers to the network of relationships between its users as the "Graph" or the "Social Graph "

9.      The Facebook Developer Platform (also called "Facebook Platform") enables third-party developers ("Developers") to make their applications and other services available to Facebook users.

10.     Facebook announced the opening of Facebook Platform to Developers on or about June 1, 2007.

11.     At the opening of Facebook Platform, Facebook stated· "With this evolution of Facebook Platform, we've made it so that any developer can build the same applications that we can. And by that, we mean that they can integrate their application into Facebook — into the social graph — the same way that our applications like Photos and Notes are integrated."

12.     Facebook thereby permitted Developers to have open, equal access to integrate applications into Facebook.

13.     Facebook did not state or imply that access to Facebook Platform might later be rescinded or provided on an unequal basis.

14      As recently as March 16, 2015, this representation remained available on Facebook's web page.

15.     On or about April 21, 2010, Facebook announced the launch of Graph Application Programming Interface ("Graph API") at its developer conference.

16.     Graph API allows Developers, with the consent of a Facebook user, to read data from and write data to Facebook.

17.     Developers can only access Facebook content (referred to as "endpoints") with explicit permission from the user.

18.     Examples of endpoints include a user's birthdate, favorite athletes, or photos

19      Graph API also permits access to endpoints regarding a user's friends. One such endpoint is the set of photos that a user's friends had chosen to share with that user (the "Friends' Photos Endpoint") A user's friends can control access to their photos and other endpoints by Developers even if they are not users of the Developer application.

3

Case No. _____          Plaintiff's Complaint for Injunction and Damages

20. By granting Developers access to the Friends' Photos Endpoint, Facebook allowed Developers to build applications that enabled a Facebook user to search the user's friends' photos via a Facebook platform application, assuming the user's friend provided such permission to Developers.

21 During the announcement of Graph API, Facebook touted several features of Graph API in order to increase its appeal to Developers such as 643.

22. Facebook emphasized how Graph API would become more and more open to developers: "As we open the graph, developers can use these connections to create a smarter, more personalized Web that gets better with every action taken."

23. Facebook also emphasized the business potential of Graph API: "Through Facebook's new tools and technologies, every developer — new and existing, big and small, novice and advanced — can engage users, build businesses and revolutionize industries."

24 As recently as March 16, 2015, these representations remained available on Facebook's web page.

25. 643 relied upon these representations, and others, as to the open nature of Graph API, and invested considerable time, energy, and money developing an application to make use of Graph API on Facebook.

26. In December 2012, 643 entered into the Facebook Developer Platform, which permitted 643 to develop applications using the Graph API.

27. 643 has developed a unique automated image classification capability, which it used to develop an application called Pikinis ("the App").

28. The App is available for download on any iOS-compatible device, including the iPhone and iPad. The App enables Facebook users to reduce time spent searching by automatically classifying photos that their friends have shared with them through Facebook's network, assuming their friends have provided such permission to Developers.

29 The App requires use of Facebook's Graph API, and specifically the Friends' Photos Endpoint.

FINAL

4

Case No. _____          Plaintiff's Complaint for Injunction and Damages

30.    The App uses 643's pattern-recognition technology to search through shared photos and identify those of their friends at the beach or in the summer.

31.    643 conducted initial user research that indicated considerable consumer demand for the App.

32.    Facebook has never expressed any disapproval of the App.

33    643 made plans to market and promote the App to attract users.

34    643 sells the App for $1 99 in Apple's App store.

35    The basic version of the App allows a user to run a certain number of searches per month.

36.    In addition, users can choose to pay for premium access, which allows unlimited searching. 643 offers different pricing tiers for premium access, ranging from $1.99 for a monthly subscription, to $6 99 for 6 months, to $9.99 for 12 months.

37.    Facebook benefits from the work of Developers such as 643 who create applications for use with Facebook. These applications can enhance user experience and drive traffic to Facebook's website and mobile app, which in turn generates revenue for Facebook through advertising sales, its primary revenue stream.

38    On January 20, 2015, Facebook sent an email to 643 stating that 643 must "upgrade" the App to Graph API v. 2.0 by April 30, 2015.

39.    The email stated that Facebook would end third-party access to the Friends' Photos Endpoint on April 30, 2015

40    The App will not function at all without access to the Friends' Photos Endpoint, so Facebook's suggestion that 643 "upgrade" the App to Graph API v. 2.0 was not possible.

41.    By deciding to end access to the Friends' Photos Endpoint, Facebook has made it impossible for 643 to continue to operate the App, to abide by the license agreements and purchase terms entered into by 643 with its users, and for 643 to recoup any of its investment of capital, human labor, time, effort, and energy

42.    643 has sold approximately 5,000 copies of the App since launch.

43.    A substantial portion of App users have paid for premium access

5

Case No. _____    Plaintiff's Complaint for Injunction and Damages

44.    Each one of the App users entered into a license agreement with 643

45.    Facebook requires Developers to enter into license agreements with users of applications for Facebook  These license agreements must, among other things, require that the users of these applications adhere to Facebook's terms of service

46    Accordingly, Facebook knew, or had reason to know, about the existence of 643's license agreements with its users.

47    Had Facebook refrained from ending access to Friends' Photos Endpoint, 643 could have quickly begun to generate hundreds of thousands of dollars of revenue on a monthly basis

48.    In total, 643 expended approximately $1.15 million in capital and uncompensated labor by its executives in developing and marketing the App

49.    643 attended Facebook events for Developers and made known the harm caused verbally and via email to the appropriate Facebook employees

50    Faced with the imminent loss of its investment, 643 wrote to Facebook on March 16, 2015, and informed Facebook that its decision to discontinue access to the Friends' Photos Endpoint would harm 643 in several ways  643 informed Facebook that it had reasonably relied on Facebook's representations that the endpoints would remain open, and that Developers would have an equal opportunity to integrate applications into the social graph.

51.    643 requested that Facebook continue to permit Developers to have access to the Friends' Photos Endpoint.

52.    643 alerted Facebook to the considerable harm it would suffer should access be cut off.

53    643 also noted that some of its users had entered into subscriptions that extend beyond the April 30, 2015, cut-off date, and that these users could be entitled to refunds of their purchases.

54    As of the date of this complaint, 643 has received no response to its letter

55.    Facebook has not announced that it would change its policy.

6

Case No _____    Plaintiff's Complaint for Injunction and Damages

56      In doing the things herein alleged, Facebook acted with fraud, malice and oppression, and in reckless disregard of the rights of 643

## COUNT I: PROMISSORY ESTOPPEL
### [Against all Defendants]

57      643 re-alleges and repleads paragraphs 1 through 56 as though set forth fully herein

58      Facebook clearly and unambiguously promised to keep open the Friends' Photos Endpoint.

59.      643 invested considerable capital, labor, time, and effort into developing the App in reliance on this promise.

60      643's reliance was reasonable.

61      643's reliance was foreseeable by Facebook.

62      643 was injured as a result of its reliance on Facebook's promise, which Facebook did not keep, in an unascertained amount in excess of $25,000 00, to be established according to proof at trial

63      Accordingly, Facebook is liable to 643 for damages.

## COUNT II: INTENTIONAL INTERFERENCE WITH CONTRACT
### [Against all Defendants]

64.      643 re-alleges and repleads paragraphs 1 through 63 as though set forth fully herein

65.      643 had entered into license agreements and subscriptions for premium access with its users

66      Facebook knew of these license agreements and subscriptions.

67      Facebook intentionally interfered with and disrupted these contracts when it stated that it would end 643's access to the Friends' Photos Endpoint on April 30, 2015, despite knowing that disruption of these contracts would be the natural result of ending 643's access.

68      As of April 30, 2015, if Facebook ends 643's access to the Friends' Photos Endpoint as it has announced, then Facebook will further intentionally interfere with and disrupt

FINAL

7

Case No. _____        Plaintiff's Complaint for Injunction and Damages

643's contracts with its users, despite knowing that disruption of these contracts would be the natural result of ending 643's access

69.    643's contract with its users was thereby disrupted, and as of April 30, 2015, 643's contract with its users will be further disrupted.

70.    As a result, 643 has suffered and will suffer damage in an unascertained amount in excess of $25,000.00 to be established according to proof at trial.

71.    Accordingly, Facebook is liable to 643 for damages.

## COUNT III: INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
### [Against all Defendants]

72    643 re-alleges and repleads paragraphs 1 through 71 as though set forth fully herein.

73.    643 had an expectation of economic benefit from third parties, including its users who downloaded the App and other Facebook users who may have downloaded the App if 643 had marketed the App as it planned.

74.    Facebook knew of 643's relationship with the users of the App, and knew of 643's plans to market the App widely.

75.    Facebook intentionally disrupted these relationships when it announced that it would end 643's access to the Friends' Photos Endpoint on April 30, 2015, despite knowing that disruption of these relationships would be the natural result of ending 643's access.

76.    As of April 30, 2015, if Facebook ends 643's access to the Friends' Photos Endpoint as it has announced, then Facebook will further intentionally interfere with and disrupt 643's relationships with its users, despite knowing that disruption of these relationships would be the natural result of ending 643's access

77.    643's relationship with its users was thereby disrupted, and will be further disrupted.

78.    As a result, 643 suffered damage in an unascertained amount in excess of $25,000.00 to be established according to proof at trial.

79.    Accordingly, Facebook is liable to 643 for damages

FINAL

8

## COUNT IV: VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200 *et seq.*
### [Against all Defendants]

80    643 re-alleges and repleads paragraphs 1 through 79 as though set forth fully herein

81.    Facebook's decision to end access to the Friends' Photos Endpoint was unlawful

82.    643 suffered substantial injury as a result of Facebook's actions, including the loss of its investment in developing the App and lost revenue.

83.    No countervailing benefits of Facebook's decision to consumers or competitors exist.

84.    643 could not have reasonably avoided its injury because Facebook only announced its decision after 643 had made considerable investment and Facebook had approved the App.

85.    643 also requested that Facebook not end access to Friends' Photos Endpoint, but Facebook did not change its decision.

86.    Accordingly, Facebook is liable to 643 for violation of California's Unfair Business Practices Act.

87    As a proximate result of the acts and conduct of Facebook herein alleged, 643 has found it necessary to engage attorneys, and incur attorney's fees, and will continue to incur attorney's fees, in an unascertained amount to be established according to proof following the conclusion of trial

### JURY TRIAL DEMAND

88.    643 demands a trial by jury on all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff 643 asks this Court to enter judgment against Defendant Facebook, Inc., as follows·

A.    A judgment or order declaring Facebook's conduct, as alleged, unlawful under California's Unfair Business Practices Act,

B.    A judgment, order, or award of damages adequate to compensate 643;

9

Case No. _____        Plaintiff's Complaint for Injunction and Damages

C     A permanent injunction prohibiting Facebook from removing access to the Friends' User Photos Endpoint,

D.     A permanent injunction prohibiting Facebook from interfering with 643's contracts or prospective business relations;

E.     An award of its reasonable attorneys' fees and costs;

F.     Punitive damages and/or treble damages as provided by California's Unfair Business Practices Act; and

G.     Such other further relief as this Court or a jury may deem proper and just.

Dated: _April 10, 2016_        CRITERION LAW

By:_____
     Basil P. Fthenakis, Esq.
     Attorney for Plaintiff
     Six4Three, LLC

     Of counsel:
     David S. Godkin
     Andrew A. Caffrey, III

Case No. _____     Plaintiff's Complaint for Injunction and Damages